694 P.2d 888

**Robert J. SCHUTTE and Dora R. Schutte, husband and wife, Plaintiffs-Respondents,**

v.

**ROCKY MOUNTAIN REALTY, INC., an Idaho corporation, Defendant-Appellant.**

No. 14816.

Supreme Court of Idaho.

Nov. 8, 1984.

Rehearing Denied Jan. 10, 1985.

Jeff Stoker, Twin Falls, for defendant-appellant.

Russell G. Kvanvig, Twin Falls, for plaintiffs-respondents.

BISTLINE, Justice.

The decision below which we review was for the most part submitted to the trial court on a stipulation of facts which included documentary evidence. There was also an agreed statement of the issues to be resolved:

"1. Does the Commission Agreement between plaintiffs and the defendant speak for itself?

"2. Based upon the Commission Agreement and the facts of this case, are the defendants entitled to any further real estate commission under the terms of said Commission Agreement?"

The testimony which was received was limited to the question of what the parties to the Commission Agreement intended when it was executed. Following the limited trial, the trial court ruled adversely to the Broker (Rocky Mountain Realty) on both issues, holding that as a matter of law the plaintiffs-sellers (Schutte et ux.) by the terms of the Commission Agreement had not become further obligated, and that the testimony as to intent was insufficient to change the plain import of the terms of the Commission Agreement.

The underlying Real Estate Purchase and Sale Agreement (With Earnest Money Provision), dated July 29, 1980, stated a $525,000 transaction, acknowledged an earnest money part payment of $10,500,[1] and closing of the somewhat complex transaction was set for on or before October 10, 1980, at which time the buyers were required to pay an additional $89,500 in cash. That document also contained the agree-

---

1. "$500 by personal check; $10,000 by promissory note transferred from E.M. dated July 27, 1980." This is taken directly from Part A of the July 29 agreement.

ment of Schutte and wife to pay the Broker six percent of the selling price or $31,500. The time and manner of payment was not specified. The Commission Agreement mutually executed by the Broker and the sellers, on October 10, 1980, recited the transfer of sellers' property to Silva and wife, and was at the least a mutual revision of the sellers' initial agreement for the payment of the Broker's commission. The commission payable was stated at $30,000, and prospectively stated that Broker would receive $6,000 at closing. That payment was made, and is not an issue. As to the balance, the agreement was not couched in terms of payment, but in terms of *entitlement,* hinged upon the making of the first and second annual payment by Silva and wife:

"III.

"The Broker shall be entitled to another $12,000.00 at such time as the Silvas make their first annual payment which is due on or before December 1, 1981.

"IV.

"The Broker shall be entitled to the balance of his commission in the amount of $12,000.00 at such time as the Silvas make their second annual payment which is due on or before December 1, 1982."

Silva and wife did not make either payment, and the sellers filed suit against them to foreclose, also naming as a party the Farm Home Administration of the United States of America (FmHA), holder of a junior mortgage. Not only was the Agreement couched in terms of Broker's future entitlement, a final paragraph explicitly detailed exactly what the parties had in mind:

"V.

"The second and third installments of the Broker's commission are entirely contingent upon the faithful performance of the Silvas in making the payments required pursuant to the terms of their contract with the Sellers. If the Silvas do not make their payment to the Sellers, the Sellers shall not be obligated to make a payment to the Broker. If the Sellers are required to foreclose their mortgage prior to the time that the Broker has been paid its entire commission any commissions not paid to the Broker shall be waived by the Broker and the Sellers shall have no further obligation to make payment for said commission."

The trial court made a particular factual finding which detailed a reason for the Commission Agreement:

"8. The plaintiffs requested and required that the commission agreement be entered into and that the commission be paid in installments out of the fear that the Silvas would not be able to perform under the sale and trade agreement and the plaintiffs did not want to have to pay the entire commission if the Silvas could not perform their obligations under the trade and sale agreement."

R., p. 134.

The record amply sustains the foregoing finding—which is not challenged on appeal.

FmHA appears to have purchased an assignment of the sellers' mortgage and pending foreclosure action in April of 1982, which was subsequent to the buyers' default in not making either of the first two annual payments due to sellers and without making any payments on a collateral trade transaction with third parties, which agreement the sellers had guaranteed as part and parcel of the entire transaction. FmHA's buyout, as mentioned, was subsequent to its being named in the sellers' foreclosure action. As a result of FmHA's intervention, the sellers recovered all that was due them on the purchase price. But, the trial court made another unchallenged finding that:

"3. As a result of the default by the Silvas, the plaintiffs have suffered detrimental consequences, including detrimental tax consequences, loss of interest, and attorney's fees."

The primary contention on the appeal is that "foreclosure" as used in the Commission Agreement contemplated the entry of a foreclosure decree—which entry never

 

took place. We are not persuaded to adopt such a tortured application. The buyers were grossly in default, and it was their default in not having made payments which authorized the sellers to both accelerate the total indebtedness and to initiate a foreclosure action which would have ordinarily taken the route of going to final decree and forced sale before any actual recovery of that indebtedness. Even absent the trial court's finding of collateral detriment, by the clear and unmistakable language of the Commission Agreement the Broker had not become entitled to any further commission at the time foreclosure was commenced. "Where parties agree that the agent's right to compensation shall depend upon certain contingencies or conditions precedent, an agent cannot recover compensation for his services unless all such conditions have been performed or fulfilled." *Koron v. Myers*, 87 Idaho 567, 577, 394 P.2d 634, 640 (1964). We see no merit in the Broker's contention that there had to be some new or additional consideration for the Commission Agreement. There was, as the trial court found, doubt in the sellers as to the financial ability of the buyers to perform the ten-year contract. The Broker was willing to assuage that doubt by agreeing that fees would be paid only as the buyers made payments. The sellers' fears turned out to be justified when the buyers made no payments.

In sum, the trial court correctly concluded that the Commission Agreement was clear and unambiguous, and did not err in ruling that the Broker had not become entitled to any commission beyond the $6,000 paid at closing.

*Affirmed.* Costs including attorney's fees on appeal to respondent.

DONALDSON, C.J., and SHEPARD, BAKES and HUNTLEY, JJ., concur.

### ON DENIAL OF PETITION FOR REHEARING

PER CURIAM.

Appellant's Petition for Rehearing questions the inclusion of an assessment of attorney's fees in the awarding of costs.

On further consideration, the Court has concluded that the assessment of attorney's fees was not warranted.

Our judgment is modified by deletion of attorney's fees on the appeal. Rehearing denied.